UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY, a foreign insurer,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD M. SIMPSON, an individual; SIMPSON LAW PLLC, a Washington Professional Limited Liability Company; LENNY NEAFUS, an individual; and LAKE WASHINGTON VIEW CEMETARY LLC, a Washington Limited Liability Company,<br><br>Defendants. | No.  3:21-cv-5766<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

## I.   INTRODUCTION

1.1   This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. ALPS Property & Casualty Insurance Company (ALPS) seeks a determination that it has no duty or obligation to defend or indemnify Richard M. Simpson or Simpson Law PLLC (collectively "Simpson") under a policy of insurance issued by ALPS with respect to the claims brought against Simpson by Lenny Neafus and Lake Washington View Cemetery, LLC (collectively "Neafus") in the matter entitled *Neafus, et. al. v. Simpson et. al.,*

1  King County Superior Court, Cause Number 21-2-06868-1 (hereinafter the "Underlying Lawsuit").

## II.   PARTIES

2.1   Plaintiff ALPS Property & Casualty Insurance Company is a foreign insurance company organized under the laws of the State of Montana with its principal place of business in the State of Montana.

2.2   Defendant Richard Simpson is an attorney licensed to practice law in the State of Washington (WSBA #53162) and is a resident and citizen of the State of Washington.

2.3   Defendant Simpson Law PLLC is an administratively dissolved Washington Professional Limited Liability Company with a principal place of business in the State of Washington. The sole member of Simpson Law PLLC is Richard Simpson, who is a resident and citizen of the State of Washington.

2.4   Defendant Lenny Neafus is a resident and citizen of the State of Washington.

2.5   Defendant Lake Washington View Cemetery LLC is a Washington Limited Liability Company with a principal place of business in the State of Washington. All members of Lake Washington View Cemetery, LLC are residents and citizens of the State of Washington.

## III.   JURISDICTION AND VENUE

3.1   This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and diversity among the parties is complete.

3.2   Venue is proper with this Court pursuant to 28 U.S.C § 1391 and local court rules as this case involves claims for insurance coverage under a policy of insurance issued in the State of Washington to an individual domiciled and doing business in the State of Washington.

## IV.    FACTS

**A.    <u>The Underlying Matter</u>**

4.1     In late 2018 or early 2019, Neafus hired Simpson to provide legal services and representation regarding an ongoing land use dispute involving the City of Renton.

4.2     Soon after Simpson was hired, Neafus and Simpson allegedly agreed to expand the scope of Simpson's representation to represent Neafus in a different component of that same land use dispute against Mt. Olivet Cemetery and its directors.

4.3     The alleged basis of Neafus' claim was that the opposing parties in the land use dispute were using land for business purposes on which Neafus had a dominant easement and for which he did not give permission.

4.4     From approximately February of 2019 onwards, Simpson allegedly represented Neafus in all aspects of the land dispute litigation with both the City of Renton and with Mt. Olivet Cemetery and its directors.

4.5     On February 11, 2019, Simpson allegedly sent a letter without the approval of Neafus to the Mt. Olivet Cemetery and its directors, asserting that the latter parties were burying bodies and selling cemetery plots on land that Neafus "owned".

4.6     On February 26, 2019, Simpson filed a Complaint against Mt. Olivet Cemetery and its directors entitled *Neafus, et. al. v. Mt. Olivet Cemetery Co., Inc., et. al.*, King County Superior Court Cause No. 19-2-05602-9 (the "Land Use Lawsuit").

4.7     On August 5, 2019, Simpson filed a Motion to Amend the Complaint to add the City of Renton as a defendant in the Land Use Lawsuit, as well as to add claims for damages. The motion was denied.

4.8     On January 3, 2020, the defendants in the Land Use Lawsuit moved for summary

judgment, which Simpson allegedly failed to contest in a proper or timely manner.

4.9 On January 31, 2020, the King County Superior Court granted the Motion for Summary Judgment and dismissed the Land Use Lawsuit with prejudice, finding that Neafus could present no evidence that he owned the land in question, nor that there had been any burials on land which he owned or had an easement upon.

4.10 In the immediate aftermath of the Court's ruling, Neafus allegedly verbally terminated Simpson as his counsel and retrieved his papers from him, but Simpson did not subsequently file a Notice of Withdrawal in the matter until several months later.

4.11 On February 28, 2020, Defendants in the Land Use Lawsuit filed a Motion for Sanctions and Fees, which Simpson allegedly received as Neafus' counsel of record but did not communicate to Neafus.

4.12 On March 2, 2020, Simpson filed a Response to the Defendants' Motion for Sanctions and Fees allegedly without telling Neafus he had done so.

4.13 On April 13, 2020, the King County Superior Court issued its Findings of Fact and Conclusions of Law on the Defendants' Motion for Fees and Sanctions, finding Neafus' claims to be frivolous, illegitimate, and ultimately intended to "harass, vex, and annoy" the Defendants.

4.14 The Court further found that Simpson's conduct during the litigation was "improper, not appropriate, and…below the standard this Court expects of the Washington State Bar", specifically singling out Simpson's attempts to "coerce" a settlement from Defendants by threatening to publicly attack their reputations and those of their witnesses in such a manner as to get them fired from their jobs, filing for CR 11 sanctions against the Defendants, and threatening to prepare and file a class action lawsuit against the defendants for at least

$10,000,000 and potentially report the Defendants to the Federal Bureau of Investigation if they did not agree to settle on terms favorable to Neafus.

4.15    The Court entered an Order sanctioning Simpson pursuant to CR 11 in the amount of $2,500 as well as $1,966.77 in court fees, with attorney costs to be determined pending the submission of accurate fee declarations.

4.16    On April 14, 2020, Simpson notified Neafus of the Motion for Sanctions and Fees allegedly for the first time.

4.17    On April 16, 2020, Simpson drafted a Motion for Reconsideration on the Court's Findings of Fact and Conclusions of Law, which Neafus allegedly told Simpson not to file. Simpson filed the motion on April 22, 2020.

4.18    On April 29, 2020, Simpson filed a Notice of Withdrawal from representing Neafus.

4.19    On May 22, 2020, the King County Superior Court denied the Motion for Reconsideration and assigned the total amount of attorney's fees and costs determining that Neafus and Simpson were jointly and severally responsible for $86,712.00 in CR 11 sanctions, which when added to the $1,966.77 already imposed, totaled $88,678.77.

4.20    On July 10, 2020, Simpson purchased a policy of insurance from ALPS Property & Casualty Insurance Company, Policy Number ALPS23468-2 (hereinafter "the Subject Policy").

4.21    In his application for the Subject Policy, Simpson answered "No" to the question "After inquiring with all members of the Firm, is any attorney or employee in the Firm aware of or have knowledge of any fact, circumstance, act, error, or omission that could reasonably be the basis of a claim against any current or former attorney, in the firm or its predecessors, regardless

of the merit of such claim?"

4.22  Upon information and belief, Neafus paid the fees and costs/CR 11 sanction amount of $88,678.77, plus interest, for a total of $90,365.56 in full on August 20, 2020, satisfying the judgment.

4.23  On May 25, 2021, Neafus filed the Underlying Lawsuit against Simpson claiming that Simpson committed malpractice, breach of fiduciary duty and violation of the Washington Consumer Protection Act.

4.24  Neafus claims that he is entitled to damages sustained as a result of Simpson's alleged malpractice, all damages sustained by him as a result of Simpson's alleged breaches of fiduciary duty, all damages sustained by him as a result of Simpson's alleged breaches of the Consumer Protection Act including treble damages to be limited at $25,000 per breach, disgorgement or forfeiture of all fees paid by Neafus to Simpson, all interest, attorney's fees, costs, and other relief as the Court would deem equitable.

4.25  Simpson first notified and tendered the Underlying Lawsuit to ALPS seeking defense and indemnity under the Subject Policy on June 2, 2021.

4.26  ALPS sent a Reservation of Rights letter on June 11, 2021 advising that it would defend Simpson in the Underlying Lawsuit pursuant to a full reservation of rights.

**B.   The Subject Policy**

4.27  The Subject Policy contains the following Insuring Agreement:

> A.   COVERAGE
>
> Subject to the **Limit of Liability**, exclusions, conditions and other terms of this **Policy**, the **Company** agrees to pay on behalf of the **Insured** all sums (in excess of the **Deductible** amount) that the **Insured** becomes legally obligated to pay as **Damages**, arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST

REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD**, provided that all of the following conditions are satisfied:

1. The **Claim** arises from a **Wrongful Act** that occurred on or after the **Retroactive Coverage Date** set forth in Item 2 of the **Declarations**;

2. At the **Effective Date** of this **Policy**, no **Insured** knew or reasonably should have known or foreseen that the **Wrongful Act** might be the basis of a **Claim**;. . .

4.28 The Subject Policy contains the following Definitions pertinent to the above-described Insuring Agreement:

C. **Claim** means a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the **Insured**.

H. **Damages** means any:

1. Monetary award by way of judgment or final arbitration, or any settlement; and
. . .

**Damages** does *not* mean *nor* include any:

…

3. Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

4. Awards deemed uninsurable by law;

5. Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

        6.        Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured;

        7.        Injury or damage to, destruction of, loss of, or loss of use of any funds or property; or

. . .

Y.    **Professional Services** means services or activities performed for and on behalf of the **Named Insured** or a **Predecessor Law Firm** and rendered solely to others as:

        1.        An **Attorney** in an attorney-client relationship on behalf of one or more clients applying the **Attorney**'s specialized education, knowledge, skill, labor, experience and/or training, including pro bono services;

. . .

BB.    **Wrongful Act** means an actual or alleged**:**

        1.        Act, error or omission in **Professional Services** that were or should have been rendered by the **Insured**;. . .

4.29    The Subject Policy also contains that following provisions relating to the limits of liability:

E.    EXHAUSTION OF LIMIT OF LIABILITY AND TENDER OF REMAINING LIMIT OF LIABILITY

The **Company**'s duty to defend shall be fully satisfied, and the **Company** shall not be obligated to continue to defend any **Claim** or pay any **Claim Expenses**, nor be obligated to pay any **Damages**, or interest thereon, after:

        1.        The applicable **Limit of Liability** has been exhausted by payments of **Damages** and/or **Claim Expenses**; or

        2.        The **Company** has deposited an amount equal to the applicable **Limit of Liability**, minus any **Damages**

paid on the **Claim** and any **Claim Expenses** paid on the **Claim** and chargeable against the **Limit of Liability**, with a court of competent jurisdiction, to be disbursed by the court's order.

In either such case, the **Company** shall have the right to withdraw from further defense of the **Claim** by tendering control of the defense to the **Insured**. The **Insured** agrees, as a condition to the issuance of this **Policy**, to accept such tender.

4.30 The Subject Policy contains the following Definition applicable to the foregoing Exhaustion provision:

    D.    **Claim Expenses** means:

        1.    Fees charged by any attorney(s) designated by the **Company** to defend a **Claim** or otherwise represent an **Insured**;

        2.    All other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **Claim** (including a suit or proceeding arising in connection therewith), if incurred by the **Company**, or if incurred by the **Insured** with the prior written consent of the **Company**; and

        3.    Any supplementary payments incurred or reimbursed by the **Company** under Section 1.D.

    **Claim Expenses** does *not* mean *nor* include:

        4.    Salaries or other compensation of regular employees or officials of the **Company** or the **Named Insured**; or

        5.    Premiums for any supersedeas, appeal, attachment or other similar bond and the **Company** shall have no obligation to apply for, furnish or issue such bond.

4.31 The Subject Policy contains the following Exclusions:

SECTION 3 – EXCLUSIONS

THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:

A. Any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an **Insured**, or any **Personal Injury** arising from or in connection with such conduct, subject to Section 6.A. ("innocent insured coverage");

E. Any **Wrongful Act** that occurred prior to the **Effective Date** of this **Policy**, if:

1. The **Wrongful Act** occurred in the course of services or activities performed for a firm other than the **Named Insured**, and there is another policy of professional liability insurance that provides coverage for the **Claim**, regardless of the amount, if any, of the available limits of liability of the other policy, and regardless of whether or not the deductible provisions or limits of liability of the other policy are different from those of this **Policy**;

2. There is an earlier-incepting policy of professional liability insurance that provides coverage for the **Claim**, or would have provided coverage for the **Claim** if the **Insured's** obligations under that policy had been complied with, regardless of the amount, if any, of the available limits of liability of the prior policy, and regardless of whether or not the deductible provisions or limits of liability of the prior policy are different from those of this **Policy**; or

3. Prior to the **Effective Date** of this **Policy**, any **Insured** gave or should have given to any insurer, notice of a **Claim** or potential **Claim** arising from or in connection with the **Wrongful Act**, or from any **Wrongful Act** that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the **Claim** or potential **Claim**.

4.32 The Subject Policy contains the following General Conditions:

B. INSURED'S OBLIGATIONS UPON NOTICE OF CLAIM OR POTENTIAL CLAIM

> 1. When an **Insured** becomes aware of a **Wrongful Act** that could reasonably be expected to be the basis of a **Claim**, but no **Claim** arising therefrom has yet been made, then as a condition precedent to the **Company**'s obligation to defend or indemnify the **Insured** under this **Policy**, the **Insured** shall immediately give written notice to the **Company**. Such notice shall include the fullest information obtainable concerning the potential **Claim**. The **Insured** must deliver written notice to the **Company** in accordance with the CLAIMS MADE AND REPORTED POLICY paragraph set forth on page 1 of this **Policy**."
>
> K. STATEMENTS IN DECLARATIONS AND APPLICATION
>
> By acceptance of this **Policy**, each **Insured** agrees with, represents to and assures the **Company** that the statements, information and representations in the **Declarations**, in the application for this **Policy**, and in the applications for each prior policy issued by the **Company** to the **Insured**, are true and correct, that the **Declarations** and the application form a part of this **Policy**, and that this **Policy** is issued in reliance upon the truth of such statements, information and representations.

4.33   ALPS reserves the right to assert any other policy language or policy coverage documentation that may be potentially applicable to the claims asserted by Neafus against Simpson arising out of the subject matter.

V.   **THERE IS AN ACTUAL AND JUSTICIABLE CONTROVERSY AS TO ALPS' COVERAGE OBLIGATIONS UNDER THE POLICY**

5.1   There is no coverage available to Simpson, his marital community, or to Simpson Law PLLC for the claims arising out of the Underlying Lawsuit.

5.2   The Policy provides coverage for all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with a claim first made against the insured and first reported to the company during the policy period, provided that the Claim arises from a Wrongful Act that occurred on or after the Retroactive

Coverage Date, that no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim.

5.3   The Policy defines "damages" to include a monetary award of damages, but specifically excludes punitive or exemplary damages, sanctions, attorney's fees or costs, disgorgement or set-off of attorney's fees, and other such damages.

5.4   There is an actual and justiciable controversy as to whether the relief requested in the Underlying Lawsuit constitutes covered "damages" as that term defined.

5.5   The Policy provides coverage for Damages that the insured is legally liable for a Wrongful Act.  The Policy defines Wrongful Act to include any error in the rendering or failure to render Professional Services.  The Policy defines Professional Services to include the insured's practice of law for a client.

5.6   There is an actual and justiciable controversy as to whether the claims against Simpson in the Underlying Lawsuit involve allegations of Wrongful Acts in the rendering or failure to render Professional Services as those terms are defined.

5.7   The Policy provides coverage for claims first made against the insured during the policy and first reported to ALPS during the policy period.

5.8   There is an actual and justiciable controversy as to whether the claims asserted against Simpson in the Underlying Lawsuit were first made and reported during the ALPS policy period.

5.9   The Policy provides coverage for Damages caused by a Wrongful Act, provided that prior to the inception of the Policy no insured knew nor reasonably should have known or foreseen that a Wrongful Act might be the basis of a Claim.

5.10   There is an actual and justiciable controversy as to whether Simpson knew or

should have known or foreseen that he had committed Wrongful Acts which might result in a Claim prior to the inception of the Subject Policy.

5.11   The Policy provides that ALPS' duty to defend is fully satisfied upon exhaustion of the Limit of Liability through payment of Damages or claim expenses.  The Policy defines "Claim Expenses" to include payment of attorney's fees and litigation costs associated with the defense of Simpson in the Underlying Lawsuit.

5.12   There is an actual and justiciable controversy as to whether ALPS' duty to defend will cease upon the exhaustion of the limit of liability through payment of Damages or Claim Expenses.

5.13   The Policy specifically excludes coverage for damages arising from any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error, or omission.

5.14   There is an actual and justiciable controversy as to whether the claims asserted against Simpson in the Underlying Lawsuit include dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful acts.

5.15    The Policy specifically excludes coverage for any Wrongful Act that occurred prior to the inception of the Policy, if any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

5.16   There is an actual and justiciable controversy as to whether the claims against Simpson in the Underlying Lawsuit involve Wrongful Acts that were or should have been reported to any insurer or which were temporally and logically connected to a Claim or potential

Claim.

5.17    The Policy requires that an insured immediately give written notice to ALPS of a Wrongful Act that could reasonably be expected to be the basis of a claim for malpractice against the Insured as a condition precedent to ALPS defending or indemnifying the claim.

5.18    There is an actual and justiciable controversy as to whether Simpson complied with the notice conditions of the subject Policy when he failed to immediately give written notice to ALPS of the Wrongful Acts forming the basis of the Underlying Lawsuit upon his purchase of the subject Policy.

5.19    The Policy requires that the insured party agrees with, represents to, and assures ALPS that the statements, information, and representations in the Declarations, in the application for the Policy, and in the applications for each prior policy issued by ALPS to the insured party, are true and correct.

5.20    There is an actual and justiciable controversy as to whether Simpson submitted true and correct information when he assured ALPS that he did not have any knowledge of any fact, circumstance, act, error, or omission which could reasonably be expected to be the basis of a claim against him when he applied for the Policy on July 10, 2020.

5.21    ALPS reserves the right to assert any other exclusions or grounds for which coverage for the claims against Simpson and Simpson Law PLLC may be excluded under the policy.

### VI.    FIRST CAUSE OF ACTION – DECLARATORY RELIEF

6.1    ALPS is entitled to Declaratory Judgment in its favor, specifically including a judicial determination as to its defense and indemnity obligations to Simpson, his marital community, and to Simpson Law PLLC under the policy of insurance issued by ALPS for the

claims alleged in the Subject Lawsuit.

## VII.    PRAYER FOR RELIEF

ALPS, having alleged the foregoing, does now hereby pray for relief as follows.

7.1    For a declaration that ALPS owes no defense obligation to Simpson, to his marital community, or to Simpson Law PLLC for any claims arising from the Subject Lawsuit.

7.2    For a declaration that ALPS owes no indemnity obligation to Simpson, to his marital community, or to Simpson Law PLLC for any claims arising from the Subject Lawsuit.

7.3    For all interest allowed by law.

7.4    For attorney fees and costs allowed by statute and law.

7.5    For other and further relief as the Court deems just and equitable.

DATED this 15th day of October, 2021.

LETHER LAW GROUP

*/s/ Thomas Lether*
Thomas Lether, WSBA #18089
*/s/ Eric J. Neal*
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N. Suite 100
Seattle, WA 98109
Telephone: 206-467-5444
Facsimile: 206-467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for Plaintiff ALPS Property & Casualty Insurance Company*